TODD A. PICKLES (SBN 215629)
picklest@gtlaw.com
GREENBERG TRAURIG, LLP
1201 K Street, Suite 1100
Sacramento, CA 95814
Tel:  916.442.1111
Fax:  916.448.1709

MICHAEL R. SKLAIRE (*pro hac vice* to be filed)
SARAH M. MATHEWS (*pro hac vice* to be filed)
AARON M. LEVIN (*pro hac vice* to be filed)

*Counsel for Plaintiff, Behring Regional Center LLC*

[See signature page for additional counsel contact information]

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEHRING REGIONAL CENTER LLC<br><br>        Plaintiff,<br>v.<br><br>ALEJANDRO MAYORKAS,<br>in his official capacity as Secretary of the<br>Department of Homeland Security, and<br><br>UR M. JADDOU,<br>in her official capacity as Director of the United<br>States Citizenship & Immigration Services,<br><br>        Defendants. | CASE NO.3:22-cv-02487<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

COMPLAINT

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

1.     Plaintiff Behring Regional Center LLC, formerly known as Berkeley Regional Center Fund, LLC, ("BRC") established under the laws of the State of California in 2013, a United States Citizen & Immigration Services ("USCIS" or the "Agency")-designated regional center, seeks declaratory and injunctive relief against Defendants, the Secretary of the U.S. Department of Homeland Security ("DHS") Alejandro Mayorkas and the Director of USCIS Ur M. Jaddou in their official capacities (collectively "Defendants") based on the following allegations.

**INTRODUCTION AND BACKGROUND**

2.     This case involves the EB-5 Regional Center Program ("Regional Center Program"), a subpart of the EB-5 Immigrant Investor Program ("EB-5" or the "Program") that authorizes foreign investors to pool their investments using entities known as "regional centers" in order to meet the requirements of the Program and obtain a green card.  Plaintiff is a regional center that collects funds from foreign investors using the Regional Center Program.

3.     Plaintiff files this complaint because of USCIS's recent arbitrary and unilateral deauthorization of regional centers.  USCIS, a branch of DHS, announced guidance on its website (the "Announcement") directly contradicting the plain meaning of the FY 2022 Consolidated Appropriations Bill (Consolidated Appropriations Act, 2022, Pub. L. No. 117-103, 136 Stat. 49) (the "Omnibus Act") and EB-5 Reform and Integrity Act of 2022 (the "Integrity Act").  The Announcement deauthorized already certified regional centers and retroactively applied new requirements to these existing regional centers.  This retroactive application of the new requirements squarely contradicts the Omnibus Act and the Integrity Act, which make clear that existing regional centers are to remain designated as such.

4.     In addition, USCIS failed to consider several important aspects to their decision, rendering this Announcement arbitrary and capricious.  First, USCIS failed to properly weigh the administrative burden on regional centers and the Agency alike.  Second, USCIS already has tools in place to institute new integrity measures, required by Congress through the Integrity Act, for existing regional centers going forward without retroactively deauthorizing regional centers that were approved prior to the Integrity Act.  Third, the Announcement does not consider or protect investors from a

COMPLAINT

1    decision to decertify the existing regional centers or allow them to reaffiliate with a regional center that

2    obtains recertification.

3        5.    Thus, USCIS's Announcement was an unlawful interpretation of the statute and its

4    application was arbitrary and capricious pursuant to the Administrative Procedure Act ("APA").  5

5    U.S.C. § 706(2).

6        6.    The effect of this retroactive deauthorization has a detrimental effect on all regional

7    centers, including BRC, that has threatened their existence and caused irreparable harm.  USCIS

8    currently has a wait of approximately 62-115 months for approval of regional centers (when the statute

9    only reauthorizes the Regional Center Program for five years).  Since the regional centers cannot bring

10   in new EB-5 investments or implement new offerings while they are deauthorized, regional centers

11   will have no incoming funds to sustain operations.  Despite their deauthorization, however, regional

12   centers will be compelled to remain open for investors with pending EB-5 applications and pay USCIS

13   thousands of dollars in annual recertification dues in the meantime.  Due to the Agency's decisions,

14   BRC in particular has had withdrawal requests from investors, stalled and canceled projects, and

15   funding concerns that threaten the very existence of the business.   USCIS's Announcement

16   deauthorizing regional centers inhibits innovative projects, frustrates foreign investment by escalating

17   the risks to unacceptable levels, and destroys any of the last lifelines that regional centers can offer to

18   prospective investors.

19                              **JURISDICTION AND VENUE**

20       7.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331,

21   which confers original jurisdiction over all civil suits arising under the Constitution, the laws of the

22   United States, 28 U.S.C. § 2201 (authorizing declaratory relief), and 5 U.S.C. § 701 et seq. (judicial

23   review provisions of the Administrative Procedure Act).

24       8.    Venue is proper pursuant to 28 U.S.C. § 1391(e) and in this division because Plaintiff

25   resides in this venue and Defendants are agencies and officers of the United States.

26

27

28

COMPLAINT

**PARTIES**

9.      Plaintiff BRC is a California Limited Liability Company located in Contra Costa County, California, that sponsors EB-5 investments to fund both third-party projects and BRC-affiliated projects using funds from EB-5 investors within the Northern District of California.

10.     Defendant Alejandro Mayorkas is the Secretary of the Department of Homeland Security. He is being sued in his official capacity only.

11.     Defendant Ur M. Jaddou is the Director of U.S. Citizenship and Immigration Services. She is being sued in her official capacity only.

**FACTUAL BACKGROUND**

*The Regional Center Program*

12.     The EB-5 Program is an effective and essential program that provides an opportunity for foreign investors to invest in certain high unemployment or rural areas, in a business will create or has created ten jobs, to be eligible to become a permanent resident.  In 1990, under the Immigration and Nationality Act ("INA"), Congress established the fifth employment-based preference ("EB-5"), immigrant visa category for qualified foreign investors.  *See* INA § 203(b)(5); 8 U.S.C. § 1153(b)(5). The EB-5 visa category allows foreign entrepreneurs, and their family members, an opportunity to invest in U.S. communities that are economically disadvantaged in exchange for lawful permanent residence in the United States.  Public Law No. 102-395, Title VI § 610(b); *see also* 8 U.S.C. § 1153. Congress sought, through this new category, to stimulate the U.S. economy and generate employment growth.  *See* 8 U.S.C. § 1153(b)(5)(A)(ii); 135 Cong. Rec. 101st Cong. S. 7772 (July 12, 1989) (detailing the importance of job creation).

13.     The EB-5 Program gained substantial popularity after the 2008 financial crisis when project developers could not obtain traditional bank loans and sought out other sources of funding.  In the last decade, the Program received recognition among foreign entrepreneurs as a reliable and expedited path to become a permanent resident, living and working in the United States.

14.     To be considered for permanent residency, a foreign investor was initially required to invest at least $1 million in a new commercial enterprise in the United States that would create at least ten full-time jobs for United States citizens or legal aliens.  *See* 8 U.S.C. § 1153(b)(5).  The INA also

4

COMPLAINT

provides a reduced investment threshold for depressed areas of the country, stating that "in the case of investment made in a targeted employment area, [the Secretary of Homeland Security may] specify an amount of capital required . . . that is less than (but not less than 1/2 of) the [standard investment amount] . . . ." of $1 million.  8 U.S.C. § 1153(b)(5)(C)(ii).  These areas are known as "targeted employment areas" or TEAs.  The statute defined TEA to be "a rural area or an area which has experienced high unemployment (of at least 150 percent of the national average rate)," and it defines "rural area" to be "any area other than an area within a metropolitan statistical area or within the outer boundary of any city or town having a population of 20,000 or more (based on the most recent decennial census of the United States)."  *See* 56 Fed. Reg. 60897 (1991) at 8 C.F.R. § 204.6(e); 8 U.S.C. § 1153(b)(5)(B).

15.    The Regional Center Program allows investors to meet the requirements of the Program through more efficient means.  The term regional center refers to an entity (often a limited partnership or a limited liability corporation) where investments from multiple foreign nationals and non-EB-5 investors (e.g., U.S. citizens) can be pooled to fund a broad range of projects, structured through various models (lending, equity, direct investment, etc.).

16.    Through the Regional Center Program, investors are permitted to submit their investments to regional centers, which pooled investments for larger scale projects offer the potential for a more competitive return on the individual's investment.  The Regional Center Program also eases investors' burden to create ten jobs on their own, as regional centers can certify that the investment creates direct or indirect jobs.  Prior to June 30, 2021, the Regional Center Program accounted for nearly 95% of EB-5 investments.

17.    Regional centers must be approved by USCIS in order to collect funds under the Regional Center Program.  Prior to the Announcement, Plaintiff was a USCIS-approved regional center in good standing.

*Reauthorization of the Program*

18.    In mid-2021, USCIS interpreted that Congress allowed the Regional Center Program to expire as of June 30, 2021.  Though this was an incorrect interpretation of the statute, USCIS stopped

COMPLAINT

taking foreign nationals' applications for visas through the Regional Center Program.  Therefore, USCIS has not received a visa application using a regional center since this date.

19.    Nevertheless, on March 15, 2022, as part of the FY 2022 Consolidated Appropriations Bill, the President signed a law that explicitly reauthorized the EB-5 Regional Center Program – the Integrity Act.

20.    The Integrity Act extended the Regional Center Program for five years, until September 30, 2027.  The Integrity Act authorized the grandfathering of any petitions on file for any application filed prior to September 30, 2026.

21.    Intended as anti-fraud measures, Congress included new requirements for new regional centers in relation to securities compliance, record keeping, ownership, and administration.  First, entities seeking regional center designation must provide a proposal in compliance with the new program requirements, which will be effective on May 14, 2022.  Second, regional centers must undergo a USCIS audit every five years, maintain documentation of broad certifications of securities, and adhere to demanding compliance obligations.  Third, regional centers are required to file applications with USCIS for an investment project before making any investments, accounting for a comprehensive business plan, an economic analysis addressing job creation, and any Securities and Exchange Commission documents, along with documents provided to investors.  Failure to comply will result in a regional center's incurrence of sanctions for misstatements or noncompliance which may result in the center's suspension, fines up to 10% of capital raised, debarment of individuals, or termination.

22.    The Act makes clear that a business plan approved prior to the date of enactment of the Integrity Act remains binding for purposes of adjudication of subsequent petitions seeking EB-5 visas.

*USCIS's Interpretation of the Integrity Act*

23.    At issue is USCIS's arbitrary decision to void any *existing* regional center designations approved prior to the Integrity Act.  As of April 20, 2022, USCIS posted the following Announcement to its website:

> Congress repealed Section 610 of the Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1993, in the EB-5 Reform and Integrity Act of 2022, Div. BB of the Consolidated

Appropriations Act, 2022 (Pub. L. No. 117-103) (Sec. 101 and 102). **Therefore, regional centers previously designated under section 610 are no longer authorized**. The EB-5 Reform and Integrity Act of 2022 requires all entities seeking regional center designation to provide a proposal in compliance with the new program requirements, which will be effective on May 14, 2022. We will provide further guidance to entities desiring to be designated as regional centers under the new program. We are not accepting Form I-924, Application For Regional Center Designation Under the Immigrant Investor Program, for this purpose.

*EB-5 Immigrant Investor Program*, USCIS.gov, https://www.uscis.gov/working-in-the-united-states/permanent-workers/eb-5-immigrant-investor-program (last accessed April 20, 2022) (emphasis added).

24. Through this Announcement, USCIS made the unilateral decision to void any existing regional center designations and make regional centers reapply for authorization. In essence, USCIS retroactively applied the new integrity measures to existing regional centers to decertify every regional center across the board until such regional centers can submit a new petition to be classified as a regional center, including affirmation of compliance with the integrity measures.

25. This decision exceeds the Agency's authority as set out by the Integrity Act and expressly contradicts the plain language and intent of the statute. The Integrity Act indicates that existing regional centers remain designated and are not deauthorized upon enactment of the statute. As stated *supra*, Congress explicitly anticipated this situation and provided that a business plan that was approved prior to the date of the enactment of the Integrity Act "remains binding" for purposes of adjudication of pending investors' petitions with a pre-enactment offering. Therefore, there is no Congressional intent, to deauthorize existing regional centers in good standing. In fact, this language indicates Congressional intent to keep existing regional centers authorized.

26. It appears that USCIS's erroneous interpretation of the Integrity Act relies on a fundamental misunderstanding that the Regional Center Program was "repealed" by Congress. The Regional Center Program was never repealed. Instead, the Integrity Act moved the Regional Center Program's authorizing language from the Appropriations Act of 1992 to the INA, which houses the general authorizing language for the EB-5 Program. Indeed, the section title of the Integrity Act is "Reauthorization and Reform of the Regional Center Program" demonstrating clear Congressional intent that this statute is a reauthorization and not a repeal. Integrity Act § 103.

7

COMPLAINT

27. At best, under USCIS's previous misreading of the Regional Center Program authorization, the Regional Center Program was permitted to lapse and was subsequently reauthorized. Existing regional centers did not simply disappear upon any expiration of the Regional Center Program. Though USCIS stopped accepting new immigrant petitions, there were still pending petitions that had (and have) not yet been adjudicated using previously designated regional centers. These regional centers needed to remain authorized while petitioners' applications were pending; otherwise, investors applying for a green card upon an approved petition would be denied.

28. Further, there is no language in the Integrity Act authorizing USCIS to apply the new integrity measures to regional centers that were already authorized after the fact. To the contrary, the statute references a clear "date of enactment" after which the law is effective. Integrity Act at Section B(ii)(IV)(bb) (referencing approvals of regional centers "before the date of enactment").

29. Moreover, the Announcement requires that existing regional centers submit new business plans for their offerings. But regional centers who sponsored investors with pending petitions had already submitted an approved business plan for each offering through the old Regional Center Program regime. Deauthorizing regional centers *per se* and requiring them to submit a new business plan for already-approved projects is a retroactive application of the law to already approved business plans. There is no language in the Integrity Act authorizing retroactive application of new integrity measures to already-approved business plans.

30. In addition, USCIS's Announcement failed to consider important aspects of the problem in reaching their unauthorized decision. The Announcement prevents a smooth transition between the old procedure, with its still-pending petitions, and the new requirements, to avoid unnecessary redundancies and additional administrative burdens for the agency. Designated regional centers that have remained in good standing with USCIS, and which complied with the rules even during the Program's lapse are jeopardized by the USCIS's decision. Specifically, requiring all regional centers to start over and get back in line to commence the process to be redesignated will put immense, and enterprise-ending, burden on BRC and the regional centers involved, causing an undue delay in processing investors' visa petitions. USCIS has put forth no viable process or guaranteed timeline for recertification to ease this administrative burden, and the current wait time for recertification is two to

COMPLAINT

1   four years.  The Agency failed to consider that there is a likelihood that not a single regional center

2   will be reauthorized before the expiration of the Integrity Act's five-year reauthorization.

3         31.    USCIS's interpretation is particularly illogical because USCIS has less burdensome tools

4   to ensure that regional centers comply with the required integrity measures going forward.  The Agency

5   currently has the tools to confirm compliance with the new integrity measures without the need for a

6   full-scale redesignation of existing regional centers.  Regional centers still need to make all required

7   compliance certifications at the end of this fiscal year.  To the extent a regional center is unable to

8   satisfy those certifications or compliance checks, USCIS will *then* have valid authority to terminate

9   them.  Any such terminations prior to allowing regional centers the opportunity to comply in the

10   ordinary course is unlawful.

11         32.    In addition, a regional center must file an application for approval of an investment in

12   every *new* commercial enterprise where no such prior approval of the business plan exists.  Therefore,

13   for new projects and new commercial enterprises seeking to raise new funds under the new law where

14   no prior approval exists, the regional center must go through a pre-approval process with all required

15   certifications under INA 203(b)(5)(F).  This would encompass almost all regional centers raising new

16   funds from EB-5 investors under the INA 203(b)(5).

17         33.    Finally, USCIS failed to consider foreign nationals who have invested in existing regional

18   centers' offerings, whose applications have not yet been adjudicated.  Investors who have waited years

19   for adjudication on their petitions now face denial, because USCIS has required that a regional center

20   remain in good standing throughout the adjudication of the investor's petition.  Without a valid regional

21   center associated with an investor's petition, the investors now face denial of his or her visa.

22         34.    In short, USCIS' interpretation to the Integrity Act on deauthorizing existing regional

23   center designations *per se*, without the explicit authorization from Congress, is an unlawful exercise

24   of discretion, which violates the APA.

25                                     **EFFECT ON PLAINTIFF AND THE ECONOMY**

26         35.    The unilateral and unjustified deauthorization of regional centers, along with any existing

27   applications, has had devastating effects on the Program's participants and the ability to raise capital

28   for job-creating development projects.  BRC has already incurred harm from Defendant's unlawful

9

COMPLAINT

1   action.   USCIS's deauthorization of BRC has prevented BRC from processing and obtaining new

2   qualifying investments under the Regional Center Program.

3       36.    Deauthorization of regional centers has required BRC and other existing regional centers

4   to start over.  There is currently a 62 to 115-month wait for approval for new regional centers.  In this

5   waiting period, BRC cannot process and obtaining new qualifying investments under the Regional

6   Center Program.   It will still have to pay investors yet refrain from any commitments to new

7   construction deals while its regional center certification is in limbo. Therefore, BRC will have to keep

8   afloat with no revenue and no growth.  In order to stay afloat, BRC will need to obtain and provide

9   bridge funding to current loans to complete current projects with outstanding capital needs.

10      37.    In addition, far from raising employees' salaries due to inflation or investing capital to

11  retain workers, BRC will be compelled to lay off workers.

12      38.    Certainty is essential for capital markets.  The Agency put forth no plan or guaranteed

13  timeline for recertification of regional centers.

14      39.    Therefore, there is substantial uncertainty for all investor petitions and regional centers.

15  This uncertainty surrounding the Regional Center Program has had many ripple effects on BRC's

16  projects.  First, BRC has been compelled to delay and cancel $450 million construction projects

17  scheduled in 2022 and 2023 and future investment opportunities.  Second, BRC has had 12 requests

18  for withdrawal because investors have no faith in the Program's promises to approve a green card.

19  Third, BRC has had a 20% turnover rate of total employees throughout the last year because employees

20  feel that the industry was "marked for death" by the government.  Finally, recruiting investors has been

21  extremely difficult because no one is quite sure if it even exists today or will exist in the future.

22      40.    Moreover, even without a regional center designation, regional centers like BRC who

23  have investors with pending applications are required to employ fund administrators, continue

24  operations, pay integrity fund fees while investors await adjudication of their petitions, all without the

25  ability to raise capital.   BRC has invested over $1 million in its regional center designation,

26  establishment, certification, and operation, which is now without value.   BRC even paid USCIS

27  thousands of dollars in annual certification (Form I-924a) fees in December 2021, after the so-called

28  expiration of the Regional Center Program.

COMPLAINT

41.     And the effects on BRC's business will continue going forward.  USCIS's actions leave prospective investors questioning the continued viability of the EB-5 Program.  Equity investors have expressed deep concern about the ability to proceed with investment opportunities with unstable or nonexistent financing options.  Further, without consistency or continuity, new investors and the public's trust in the Program are diminished.  There is simply too much risk to maintain investor interest or to direct investors to undergo the lengthy and costly process of filing a new I-924 petition.  Investors with pending applications are terrified on an emotional level that their immigration status is in peril; they invested a significant sum of money into the American economy on the promise of a green card that may never be issued.

42.     Moreover, regional centers cannot wait that long for reauthorization because construction projects are inherently vulnerable to delays.  Construction bids for new contractors are good for, at most, ninety (90) days.  Entitlements expire before the end of twenty-four (24) months.  Building permits are only good for twelve (12) months before expiration.  Bank financing letters of intent are only good for thirty (30) days and require 100% of equity (EB-5 investments) committed prior to funding.  Regional centers take risks even obtaining outside financing, because should the financing deviate from the business plan submitted to USCIS, USCIS has the discretion to deny any applications that deviate from the already-approved business plan submitted by the regional center.

43.     In addition to the effects on developers using EB-5 funds, the cancellation of the Program's regional centers confers severe effects on the U.S. economy.  The Program has generated billions of dollars of investment in the U.S. economy in the past decade.  In an unconstrained environment, studies have shown that the EB-5 Program creates hundreds of thousands of new jobs annually and can account for roughly 6 percent of all job gains.  These economic gains have suffered, if not disappeared completely.

44.     This is now the third time in the past two years that USCIS has tried to destroy the Program with unlawful agency actions.  These repeated attempts have caused BRC tremendous harm in service of keeping its business afloat.  Once again, the Agency's unlawful actions must be enjoined to safeguard BRC's business.

COMPLAINT

**Count I**

**Defendants' Retroactive Deauthorization of Existing Regional Center Designations Violates the Administrative Procedure Act Because This Action is not in Accordance With Law.**

**(5 U.S.C. § 706(2)(A))**

45.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 44 as though stated herein.

46.     The APA empowers this Court to "hold unlawful and set aside" agency action that is "not in accordance with law."  5 U.S.C. § 706(2)(A).

47.     USCIS's Announcement automatically deauthorized every existing regional center and compels existing regional centers to reapply for certifications. In doing so, it retroactively applies new provisions from the Integrity Act to existing, previously authorized regional centers, business plans of which were already approved by the Agency prior to the enactment of the statute.

48.     The plain language of the Integrity Act states that an approved business plan "before the date of enactment" of the Integrity Act's enactment date "shall be binding for the purposes of the adjudication of subsequent petitions."  Therefore, the Integrity Act specifically contemplates and directs the Agency to keep regional centers authorized for pending visa petitions that have already-approved business plans.  Moreover, Congress did not grant express authority to USCIS to apply the law retroactively. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 209 (1988) ("Retroactivity is not favored in the law.").

49.     Defendants' deauthorization of previously designated regional centers is not in accordance with the plain language of the Integrity Act and congressional intent surrounding the Regional Center Program.

50.     The Announcement constitutes a final agency action that is ripe for review pursuant to 5 U.S.C. § 704.

**WHEREFORE**, Defendants' improper voiding of existing regional center designations must be reversed.

COMPLAINT

## Count II

### Defendants' Retroactive Deauthorization of Regional Center Designations Violates the APA

### Because This Action Exceeds Defendants' Statutory Authority

### (5 U.S.C. §§ 706(2)(C))

51.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 50 as though stated herein.

52.     The APA empowers this Court to "hold unlawful and set aside" agency action that is "in excess of statutory … authority."  5 U.S.C. § 706(2)(C).

53.     USCIS's Announcement automatically deauthorized every existing regional center and compels existing regional centers to reapply for certifications. In doing so, it retroactively applies new provisions from the Integrity Act to existing, previously authorized regional centers, business plans of which were already approved by the Agency prior to the enactment of the statute.

54.     The plain language of the Integrity Act states that an approved business plan "before the date of enactment" of the Integrity date "shall be binding for the purposes of the adjudication of subsequent petitions."  Therefore, the Integrity Act specifically contemplates and directs the Agency to keep regional centers authorized for pending visa petitions that have already-approved business plans.  Moreover, Congress did not grant express authority to USCIS to apply the law retroactively. *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 209 (1988) ("Retroactivity is not favored in the law.").

55.     Defendants' deauthorization of previously designated regional centers is not in accordance with the plain language of the Integrity Act and congressional intent surrounding the Regional Center Program.

56.     The Announcement constitutes a final agency action that is ripe for review pursuant to 5 U.S.C. § 704.

**WHEREFORE**, Defendants' improper voiding of existing regional center designations must be reversed.

COMPLAINT

**Count III**

**Defendants' Retroactive Deauthorization of Regional Center Designations Violates the APA**

**Because This Action was Arbitrary and Capricious**

**(5 U.S.C. § 706(2)(A))**

57.     Plaintiff incorporates by reference the allegations set forth in Paragraphs 1 through 56 as though stated herein.

58.     The APA empowers this Court to "hold unlawful and set aside" agency action that is "arbitrary" or "capricious."  5 U.S.C. § 706(2)(A).

59.     USCIS's Announcement automatically deauthorized every existing regional center and compels existing regional centers to reapply for certifications. In doing so, it retroactively applies new provisions from the Integrity Act to existing, previously authorized regional centers, business plans of which were already approved by the Agency prior to the enactment of the statute.

60.     In choosing to deauthorizing regional centers per se and requiring compliance with new integrity measures prior to recertification, Defendants did not consider the administrative burden on the agency and regional centers, the tools it already had to apply integrity measures going forward, and the substantial delay and potential denial for investors with pending applications.

61.     Therefore, USCIS failed to consider important aspect of the problems, and therefore its Announcement was arbitrary and capricious.

62.     The Announcement constitutes a final agency action that is ripe for review pursuant to 5 U.S.C. § 704.

   **WHEREFORE**, Defendants' improper voiding of existing regional center designations must be reversed.

**PRAYER FOR RELIEF**

   **WHEREFORE**, based on the foregoing Complaint, Counts I-III, Plaintiff prays that the Court:

1.     Enter a declaratory judgment as to Counts I, II, and III that the Agency's action as described above is invalid;

COMPLAINT

1    2.    Enter an order vacating the Agency action as described above and permanently

2  enjoining Defendants from *per se* deauthorizing regional centers approved prior to passage of the

3  Integrity Act; and

4    3.    Award such further and additional relief as is just and proper.

5                                        Respectfully Submitted,

6  Dated:  April 22, 2022              By:  */s/ Todd A. Pickles*
                                        TODD A. PICKLES
7                                       picklest@gtlaw.com
                                        GREENBERG TRAURIG, LLP
8                                       1201 K Street, Suite 1100
                                        Sacramento, CA 95814
9                                       Tel:  916.442.1111
                                        Fax:  916.448.1709
10
11                                      MICHAEL R. SKLAIRE
                                        sklairem@gtlaw.com
12                                      GREENBERG TRAURIG, LLP
                                        1750 Tysons Boulevard, Suite 1000
13                                      McLean, Virginia 22102
                                        Telephone:  703.749.1300
14                                      Facsimile:  703.749.1301
15
16                                      SARAH M. MATHEWS
                                        mathewss@gtlaw.com
17                                      GREENBERG TRAURIG, LLP
                                        1144 15th Street, Suite 3300
18                                      Denver, Colorado 80202
                                        Telephone:  303.572.6500
19                                      Facsimile:  303.572.6540
20
21                                      AARON M. LEVIN
                                        levinaa@gtlaw.com
22                                      GREENBERG TRAURIG, LLP
                                        2101 L Street, N.W., Suite 1000
23                                      Washington, DC 20037
                                        Tel:  202.533.2316
24                                      Fax:  202.331.3100
25                                      *Attorneys for Plaintiff Behring Regional Center LLC*
26
27
28

COMPLAINT